UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSEPH V. KAPUSTA | : NO.: 3:02CV261 (DJS) |
| v. | : |
| EUGENE A. COPPOLA, Individually and in his Official Capacity as Superintendent of Schools; MICHAEL MUDRY, Individually and the BOARD OF EDUCATION FOR THE TOWN OF SEYMOUR | : <br> : <br> : <br> : <br> : OCTOBER 27, 2003 |

**OBJECTION TO PLAINTIFF'S MOTION FOR ORDER COMPELLING DISCOVERY**

The defendants, Eugene A. Coppola, Michael Mudry and the Board of Education for the Town of Seymour, hereby object to the plaintiff's motion for order compelling discovery dated September 23, 2003.

**I.  Background.**

The plaintiff seeks copies of the personnel files of both individual defendants and another former employee who is not a party to this lawsuit. The defendants object to the disclosure of this information on the following grounds:

i.  The information sought is immaterial and irrelevant and not reasonably calculated to lead to the discovery of admissible information; and

ii. The information sought is private and subject to disclosure only under limited circumstances which are not applicable to this case.

The plaintiff was formerly the head coach of the girls' track team at Seymour High School. He alleges that the defendants retaliated against him after he reported misconduct on the part of David Billings, the assistant coach of the girls' track team.

The plaintiff claims that the defendants violated his right of freedom of speech and his right to equal protection by forcing him to resign and failing to re-hire him.

II.    **The Personnel Files Are Not Relevant And Are Not Reasonable Calculated To Lead To The Discovery Of Admissible Evidence.**

The plaintiff contends that the personnel files of Eugene Coppola, former Superintendent of Schools, and Michael Mudry, former Athletic Director for Seymour High School, are relevant to the extent the files show whether either Coppola or Mudry suffered any repercussions by virtue of plaintiff's report of misconduct. *The defendants agree to produce any information that may exist from Coppola and Mudry's personnel files that pertain to the alleged complaint against Billings and any repercussions from said complaint.*

The defendants maintain that the remainder of the personnel files of Coppola and Mudry, however, are not relevant and are not reasonably calculated to lead to the discovery of admissible evidence. The plaintiff has not set forth any legitimate reason for the information, and the defendants are not aware of any such reason. To the extent the plaintiff seeks to obtain information regarding possible prior bad acts, said information would not be admissible at trial.

David Billings is the former assistant coach for the girls' track team at Seymour High School. He was the subject of the plaintiff's alleged complaint of misconduct to Coppola and Mudry. Billings' personnel file is not relevant and not reasonably calculated to lead to the discovery of admissible information. What is at issue in this

case is whether the defendants retaliated against the plaintiff as a result of his filing a complaint against Billings. The veracity of the plaintiff's allegations against Billings, Billings' prior work history or medical history, or other personal information that may or may not exist in Billings' personnel file are not at issue in this case. The plaintiff has not articulated the claimed relevance of this information.

## III. The Personnel Files Are Not Subject To Disclosure.

The disclosure of information contained within personnel files must be carefully tailored to a legitimate and demonstrated need. See State v. Januszewski, 182 Conn. 142, 172, 438 A.2d 679 (1980); see also, State v. Rodriguez, 37 Conn. App. 589, 610-11 (1995). In Januszewski, the Connecticut Supreme Court articulated the following rule regarding the disclosure of personnel files:

> Where disclosure of the personnel file would place in the hands of a defendant irrelevant or personal and sensitive information concerning the witness, the entire file should not be disclosed. No criminal defendant has the right to conduct a general "fishing expedition" into the personnel records of a police officer. Any request for information that does not directly relate to legitimate issues that may arise in the course of the criminal prosecution ought to be denied. In recognizing the danger of permitting the disclosure of personnel records of any witness or litigant, one court has said: "It has been widely noted that such records often contain raw data, uncorroborated complaints, and other information which may or may not be true but may be embarrassing, although entirely irrelevant to any issue in the case, even as to credibility." ... **We emphasize that, in resolving requests for disclosure, routine access to personnel files is not to be had. Requests for information should be specific and should set forth the issue in the case to which the personnel information sought will relate. The trial court should make available ... only information that it concludes is clearly material and relevant to the issue involved.**

Id. at 172-73 (internal citations omitted) (emphasis added).

In this case, the rights of a criminal defendant are not at stake. Certainly a plaintiff prosecuting a civil action has no greater right of access to an employee's personnel records than a criminal defendant.

Section 31-128f protects the disclosure of personnel files of all employees. Said statute states, in pertinent part, as follows:

> No individually identifiable information contained in the personnel file or medical records of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee except where the information is limited to the verification of dates of employment and the employee's title or position and wage or salary or where the disclosure is made: ... (2) pursuant to a lawfully issued administrative summons or judicial order, including a search warrant or subpoena, or in response to a government audit or the investigation or defense of personnel-related complaints against the employer .... Where such authorization involves medical records the employer shall inform the concerned employee of his or her physician's right of inspection and correction, his right to withhold authorization, and the effect of any withholding of such authorization upon such employee.

Section 31-128f affords a privilege to employees to maintain the privacy of their personnel records. See Carroll v. Carrol, 2003 Ct. Sup. 7480-a, *7480-d (Conn. Super. Ct. June 10, 2003) (Aurigemma, J.) (attached as **Exhibit A**). As such, a discovery request should be tailored to information relating to the issues in the case. See Szczepanski v. Town of Wolcott, 2001 Ct. Sup. 13468-ed, *13468-ef (Conn. Super. Ct. Sept. 19, 2001) (Sheldon, J.) (attached as **Exhibit B**). "Only then will the Court conduct an in camera inspection of the files to identify those portions thereof

4

which are 'clearly material and relevant to the issue[s] involved.'" Id. A general request for the entire personnel file of an individual should not be honored. See id; and Januszewzki, supra.

In this case, the plaintiff has asserted a general request for the entire personnel files of three individuals. The plaintiff has not limited the scope of his request, nor has he offered a claim of relevancy other than that discussed above and for which the defendants have agreed to provide limited records to the extent such exist. Any further disclosure is not justified.

**IV.   Conclusion.**

WHEREFORE, the defendants respectfully request that the Court sustain their objection to the plaintiff's motion for order compelling discovery.

>   DEFENDANTS,
>   EUGENE A. COPPOLA, Individually and in his Official Capacity as Superintendent of Schools; MICHAEL MUDRY, Individually and the BOARD OF EDUCATION FOR THE TOWN OF SEYMOUR
>
>   By /s/ Alexandria L. Voccio
>   Alexandria L. Voccio
>   ct21792
>   Howd & Ludorf
>   65 Wethersfield Avenue
>   Hartford, CT  06114
>   (860) 249-1361
>   (860) 249-7665 (Fax)
>   E-Mail:  avoccio@hl-law.com

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been sent, handling charges prepaid, via U.S. Mail, to the following counsel of record this 27th day of October, 2003.

Kathleen Eldergill, Esquire
Beck & Eldergill, P.C.
447 Center Street
Manchester, CT  06040

Nicholas J. Grello, Esquire
Siegel, O'Connor, Schiff & Zangari, P.C.
171 Orange Street
P.O. Box 906
New Haven, CT  06504

_____
Alexandria L. Voccio

6

Connecticut Trial Ct. Unpublished Decisions

---

CARROLL v. CARROL, No. FA-99-0090676-S (Jun. 10, 2003)

MATTHEW CARROLL v. CHRISTINE CARROL (RUGAR).

No. FA-99-0090676-S

*2003 Ct. Sup. 7480-a*

Superior Court

Judicial District of Middletown.

June 10, 2003

**Memorandum Filed**

AURIGEMMA, JUDGE.

The defendant, Christine Rugar, has moved to quash the subpoena directed at her husband's former employer and has moved to prevent the plaintiff from using those records which he illegally obtained.

### Factual and Procedural Background

A motion to modify custody, primary residence, child support and visitation of the parties' minor child, Harley Carroll, was sought by the plaintiff. Prior to a hearing scheduled in this court on March 24, 2003, a subpoena duces tecum was served by the plaintiffs counsel on Ducci Electrical Contractors, a former employer of the defendant's current husband, Glen Rugar. A representative of the former employer, Thomas B. Carew, presented the employment records to plaintiffs counsel, in the hallway at the courthouse, prior to the hearing. After reviewing the records, plaintiffs counsel informed defendant's counsel that she intended to use the records at the hearing. Defendant then moved to have the records sealed by the court. The motion to seal was granted and the parties were requested to submit briefs on the plaintiffs attorneys alleged abuse of subpoena power to improperly obtain employment records of a non-party.

### Discussion of Law and Ruling

Connecticut General Statute § 31-128f provides in relevant part:

> No individually identifiable information contained in
> the personnel file or medical records of any employee
> shall be disclosed by an employer to any person or
> entity not employed by or affiliated with the employer
> without the written authorization of such employee
> except where the information is limited to the
> verification of dates of employment and the employee's
> title or position and wage or salary or where the
> CT Page 7480-b
> disclosure is made: (1) To a third party that
> maintains or prepares employment records or performs
> other employment-related services for the employer;
> (2) pursuant to a lawfully issued administrative

Exhibit A

>  summons or judicial order, including a search warrant
>  or subpoena, or in response to a government audit or
>  the investigation or defense of personnel-related
>  complaints against the employer; (3) pursuant to a
>  request by a law enforcement agency for an employee's
>  home address and dates of his attendance at work; (4)
>  in response to an apparent medical emergency or to
>  apprise the employee's physician of a medical
>  condition of which the employee may not be aware; (5)
>  to comply with federal, state or local laws or
>  regulations; or (6) where the information is
>  disseminated pursuant to the terms of a collective
>  bargaining agreement.

Mr. Rugar, not a party to this action, did not consent to disclosure of his employment records. Therefore, they should not have been disclosed by his former employer. While his former employer was apparently unaware of § 31-128f, the plaintiffs attorney should have been aware of the existence of that statute and, therefore, should have realized that it was improper for her to look at Mr. Rugar's employment records. She also should have been aware that the power she enjoys as an officer of the Superior Court to subpoena records to a court proceeding is abused if she obtains those records on an ex parte basis rather than instructing the party to whom she has directed the subpoena to bring those records into court so that the judge can prevent any obvious violations, such as the one which occurred in this case.

>  The familiar process by which the production of
>  documents in the hands of third persons is secured is
>  the subpoena duces tecum. One upon whom such process
>  is served is bound to produce the required document.
>  *The production thus compelled does not, however,
>  signify a delivery of the papers into the hands of the
>  party calling for their production or of his counsel,
>  or a submission of them to his examination; neither
>  does such a consequence necessarily follow.* The
>  production which the possessor of the papers is
>  required to make consists of bringing them into court
>  and putting them into its control. *Having by this act
>  complied with the order of production, the producer
>  may ask the court to pass upon any claim of*
>  CT Page 7480-c
>  *privilege, or to make a personal inspection of the
>  document or documents to determine their relevancy or
>  their relevant parts before their submission to
>  counsel; and to make any proper order for the
>  protection, in such submission, of the interests of
>  the producer. as, for example, by withholding from the
>  view of counsel any irrelevant matter which he ought
>  not to be permitted to examine.*

Banks v. Connecticut Ry & Lighting Co., 79 Conn. 116, 118-19, 64 A. 14 (1906) (emphasis added).

Even if Mr. Rugar's employment records had not been protected from disclosure by § 31-128f the plaintiffs counsel should not have accepted these records from the non-party witness unless she was in court in the presence of the judge and opposing counsel. The power to issue a subpoena duces tecum is not the equivalent of an attorney's license to obtain "discovery" from a non-party. Where the subpoena power has been

abused in this fashion, courts have imposed sanctions, including preclusion of the improperly obtained documents, monetary sanctions, and disqualification of the offending attorney.

In *Martini v. Shelter Rock Realty*, 1996 Ct. Sup. 459, 15 Conn.L.Rptr. 610, No. 113425, Superior Court, Judicial District of Waterbury, Judge Pellegrino ruled that where an attorney served a subpoena duces tecum on a physician in connection with a deposition, and the deposition did not take place, but the physician sent the subpoenaed records to the attorney, that it was improper for the attorney to copy the records. He stopped short of granting the plaintiffs motion to disqualify the offending attorney because the attorney averred that he had sealed the records without inspecting them. However, Judge Pellegrino did entertain the plaintiffs motion for monetary sanctions.

In *Dawid v. Alves*, Superior Court, Judicial District of Fairfield at Bridgeport, No. 0333683 (May 19, 1997), Judge Rush held that it was not appropriate for counsel to excuse a plaintiffs doctor in return for forwarding medical records. In *McLaughlin v. McNeil*, Superior Court, Judicial District of Fairfield at Bridgeport, No. 0328787 (July 23, 1998), Judge Ford granted a motion to disqualify defense counsel, a motion for protective order and a motion for sanctions when counsel cancelled a deposition after receipt of subpoenaed records.

In *Smith v. Douglass*, Superior Court, Judicial District of Fairfield at Bridgeport, No. 0336713 (February 6, 1999), Judge Melville disqualified defense counsel for improperly obtaining records *ex parte* by means of a
CT Page 7480-d
subpoena duces tecum, stating that the practice was "reprehensible and not in our rules of practice. And for that reason I think it is important that the message get out to all people so that his situation does not occur again."

It is particularly disturbing to the court that the plaintiffs counsel apparently still does not understand the magnitude of her violation. She has not addressed her abuse of her subpoena power, or the privilege created by § 31-128f. Instead, even after having been alerted to the problem, and having been afforded time to write a memorandum, plaintiffs counsel addresses only the issue of the relevance of the improperly obtained records. She has completely missed the point. Information can be extremely relevant but cannot be used in a court proceeding if it is protected by a privilege.

In *Falco v. Institute of Living*, 254 Conn. 321, 757 A.2d 571 (2000), the plaintiff brought a bill of discovery seeking to compel the defendant psychiatric hospital to disclose the name, last known address and social security number of a patient who allegedly had attacked him during a group meeting at the hospital. The plaintiff had sought the identifying information from the defendant in order to bring a civil action against the patient before the expiration of the statute of limitations. The trial court granted the bill of discovery and the Appellate Court affirmed that order. The Supreme Court reversed, holding that although the information sought was certainly relevant even crucial, to the plaintiffs potential case, the privilege established by Connecticut General Statutes § 52-146d did not permit disclosure of the information.

In *Olson v. Accessory Controls & Equipment Corp.*, 254 Conn. 145, 757 A.2d 14 (2000), the plaintiff sued his former employer, claiming that his employment had been terminated in retaliation for information he had

provided concerning the waste disposal practices of his employer. The information at issue pertained to a report by an environmental engineering company which had been authored at the request of the defendant's attorney. Even though the disclosure and use of the report was crucial to the plaintiffs case, the Connecticut Supreme Court held the report was protected by the attorney-client privilege, and, therefore could not be used by the plaintiff Consequently, the plaintiffs case was dismissed.

The defendant has moved to quash the subpoena for the employment records of Glen Rugar. That motion is granted. Unfortunately, the improper conduct by the plaintiffs attorney has rendered the motion to quash an ineffective remedy in this case. The defendant has also filed a
CT Page 7480-e
motion in limine to prevent the use of any information contained in the subject employment records and to preclude any testimony concerning the information contained in the records at any hearing to modify custody, primary residence, child support or visitation. The court also grants this motion and orders that the plaintiff may not use any information contained in the employment records and may not offer any testimony concerning information contained in those records, which remain under seal in the file. The defendant also moved for monetary sanctions. The court will hold a hearing to determine the amount of attorneys fees that the defendant has incurred in connection with the improper use of the subpoena power.

The defendant has also moved to disqualify the plaintiffs attorney. Disqualification of counsel is a remedy that is sometimes used to guard against the danger of inadvertent use of confidential information. *American Heritage Agency, Inc. v. Gelinas*, 62 Conn. App. 711, 725, 774 A.2d 220 (2001), citing *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corporation*, 518 F.2d 751, 754 (2d Cir. 1975).

> In disqualification matters, however, we must be "solicitous of a client's right freely to choose his counsel"; *Government of India v. Cook Industries, Inc.*, 569 F.2d 737, 739 (2d Cir. 1978); mindful of the fact that a client whose attorney is disqualified may suffer the loss of time and money in finding new counsel and "may lose the benefit of its longtime counsel's specialized knowledge of its operations." Id. The competing interests at stake in the motion to disqualify, therefore, are: (1) the [plaintiffs] interest in protecting confidential information; (2) the [defendant's] interest in freely selecting counsel of [her] choice; and (3) the public's interest in the scrupulous administration of justice. *Goldenberg v. Corporate Air, Inc.*, 189 Conn, 504, 507, 457 A.2d 296 (1983), overruled in part, *Burger & Burger, Inc. v. Murren*, 202 Conn. 660, 522 A.2d 812 (1987).

*American Heritage Agency, Inc. v. Gelinas*, supra.

The court's ruling precluding the use of the information in Mr. Rugar's employment file should sufficiently sanction the plaintiff without the need to impose the drastic remedy of disqualification of his counsel. One factor in ordering disqualification of counsel is counsel's refusal to acknowledge the wrongful nature of her conduct. *Briggs v. Mcweeny*, 260 Conn. 296, 334, 796 A.2d 516 (2002). Counsel's further attempted use
CT Page 7480-f

of the information in Mr. Rugar's employment file may be deemed to
evidence a refusal to acknowledge the wrongful nature of counsel's
conduct and may result in the court granting a future motion to
disqualify the plaintiffs counsel.

    AURIGEMMA, J.
CT Page 7481

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved

Connecticut Trial Ct. Unpublished Decisions

SZCZEPANSKI v. TOWN OF WOLCOTT, No. (X02) CV-99-0154787-S (Sep. 19, 2001)

RICHARD SZCZEPANSKI, ET AL. v. TOWN OF WOLCOTT, ET AL.

*2001 Ct. Sup. 13468-ed, 30 CLR 415*

No. (X02) CV-99-0154787-S

Superior Court

Judicial District of Waterbury.

Complex Litigation Docket.

September 19, 2001

MEMORANDUM OF DECISION ON MOTION FOR PRODUCTION OF REQUESTED PERSONNEL FILES BY JULY 28, 2001

CT Page 13468-ee

SHELDON, JUDGE.

In this case, plaintiffs Richard and Leslie Szczepanski have sued four defendants — the Town of Wolcott ("Town"), Town Police Chief James Watson and Town Police Officer Richard Cyr and one Romances Crawford — to recover money damages for injuries they claim to have suffered in a motor vehicle accident allegedly resulting from the Town defendants' negligence in conducting a high-speed vehicle chase of the fleeing defendant Crawford on August 27, 1997. The case is now before the Court on the plaintiffs' motion for production of the Town's personnel files for Chief Watson and Officer Cyr.

In their motion for production, the plaintiffs counter the defendants' objection that their request is overbroad by noting that they limited themselves to requesting the files of only two of the fifteen Town employees who were somehow involved in the events of August 27, 1997. Materials in those files, they further argue, would be relevant and material to the trial preparation process, for they would "detail the education, training, competence, abilities, experience, job history, attitude and capacity of the named defendants to perform their duties with respect to the events of August 27, 1997." Plaintiff's Motion, p. 2. "Such information, " claim the plaintiffs, "bears directly and/or inferentially on the alleged negligence of Cyr and Watson. The matters are material. They are at the heart of the case." **Id**.

In **State v. Januszewski,** 182 Conn. 142, 170-73 (1980), our Supreme Court recognized that even in a criminal case, where the right of the defendant to cross examine adverse witnesses enjoys explicit constitutional protection, the right of the defendant to discover the contents of a police officer's personnel file must be balanced against the officer's interest in preserving the confidentiality of his private and personal information. "The disclosure of such information, " ruled the Court,

> must be carefully tailored to a legitimate and
> demonstrated need for such information in any given

Exhibit B

case. Where disclosure of the personnel file would
place in the hands of a defendant irrelevant or
personal and sensitive information concerning the
witness, the entire file should not be disclosed>. No
criminal defendant has the right to conduct a general
"fishing expedition" into the <personnel> <records of a
police officer. Any request for information that does
CT Page 13468-ef
not directly relate to legitimate issues that may
arise in the course of the criminal prosecution ought
to be denied.

**Id**. at 172.

It is, of course, impossible to know the contents of a police officer's personnel file without examining it. Hence, noted the Court in **Januszewski,** "[a]n in camera inspection of the documents involved . . . will under most circumstances be necessary." **Id**. at 172-73. Even so, the Court was careful to note that such an in camera inspection need not be performed in every case where a police officer is expected to testify. Instead, declaring that "routime access to personnel files is not to be had[,]" **id**. at 173, the Court ruled that

[r]equests for information should be specific and
should set forth the issue in the case to which the
personnel information sought will relate. The trial
court should make available to the defendant only
information that it concludes is clearly material and
relevant to the issue involved.

**Id**.

In this case, the plaintiffs have made a broad-based request for the production of the entire personnel file of each of the individual Town defendants. Instead of focusing their request on one or more particular issues in the case to which the contents of the files may logically be relevant, and/or categories of information that may bear upon these issues, the plaintiffs seek literally everything in the requested files because of what it may show, "directly and/or inferentially, " concerning the defendants' education, training, competence, abilities, experience, attitude and capacity to perform these duties on August 27, 1997. If ever there was a fishing expedition, this is it.

The Court has no doubt that parts of each requested personnel file will ultimately prove to be producible under the rule of **Januszewski**. Before such production can be ordered, however, the plaintiffs must comply with **Januszewski** by presenting the Court and opposing counsel with a specific request for information which sets forth the issues in the case to which the information sought will relate. Only then will the Court conduct an in camera inspection of the files to identify those portions thereof which are "clearly material and relevant to the issue[s] involved." **Id**. at 173.
CT Page 13468-eg

For the foregoing reasons, the plaintiffs' motion is hereby DENIED WITHOUT PREJUDICE to re-submission in a manner that complies with the rule of **State v. januszewski,** supra.

It is so ORDERED this 19th day of September, 2001.

MICHAEL R. SHELDON, J.

Copyright © 2003 Loislaw.com, Inc. All Rights Reserved